UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **LARRY E. GURLEY,** | ] |
| Plaintiff, | ] |
| vs. | ]   CV 08-J-2337-NE |
| **MICHAEL ASTRUE,** **Commissioner of the Social Security Administration**, | ] |
| Defendant. | |

**MEMORANDUM OPINION**

The plaintiff appeals from the decision of the Commissioner of Social Security denying him disability insurance benefits. The case is now properly before the court. *See* 42 U.S.C. § 405(g). At the time of the hearing before the Administrative Law Judge (ALJ), the plaintiff was 47 years old and had a high school education (R. 299, 304). The plaintiff alleges an inability to work due to diabetes, obesity, neuropathy, cervical neck problems, vertigo, depression, lumbar back disease, nerve damage and chronic pain (R. 70).

The ALJ found that the plaintiff's impairments which are severe are gastroesophogeal reflux disease (GERD), status post anterior cervical diskectomy and fusion (ACDF) of C5-6, degenerative disk disease in the cervical and lumbar spine, diabetes mellitus, obesity, anxiety, and depression (R. 17), but no impairment, alone or in combination, constituted an impairment listed in, or medically equal to, one of those listed in Appendix 1 of Subpart P, 20 CFR Part 404 (R. 23).

The ALJ found that the plaintiff retained the residual functional capacity to perform light work, further limited by a prohibition on climbing, ladders, ropes, scaffolds, being around unprotected heights, dangerous moving machinery, or driving commercial equipment (R. 24). He further found that the plaintiff had additional limitations including difficulty with detailed or more complex instructions, needed to have contact with coworkers and supervisors limited to occasional, and work that involved infrequent changes, with work restricted to local and familiar environments (R. 24). The ALJ determined that the plaintiff could perform work which existed in significant numbers in the national economy and therefore concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 27-28).

The plaintiff argues that the final decision of the Commissioner of Social Security denying disability benefits to the plaintiff is not supported by substantial evidence, that the ALJ erred in rejecting the opinions of plaintiff's treating physicians, that the ALJ erred in not considering the plaintiff's obesity, and that the Appeals Council should have remanded for consideration of new and material evidence (doc. 8). The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED.**

**Factual Background**

The plaintiff was born on April 4, 1960, and completed the twelfth grade in school (R. 298-299, 304). The plaintiff worked from 1985 until 2003 as a stock trucker in tire manufacturing, which is classified as medium and very low semi-skilled[1] (R. 308). The ALJ found no evidence that the plaintiff had engaged in substantial gainful activity since his alleged onset date (R. 17). At the hearing, the plaintiff testified he hurt from his neck all the way down (R. 303). In spite of medication, he has trouble with depression and anxiety (R. 303). He suffers from peripheral neuropathy from diabetes, which causes pain that radiates down one leg and into his foot (R. 303). He also has pain in his lower back (R. 303). He spends his days lying on his couch (R. 304), but he is up and down because he cannot get comfortable (R. 305). Some of the medications he takes make him fall asleep and others cause headaches and stomachaches (R. 305). The plaintiff also testified that he cannot concentrate anymore (R. 305). His wife handles all the finances and all the housework (R. 306). The plaintiff has problems with dropping things unexpectedly, due to pain in his fingers and his shoulder (R. 306-307).

Plaintiff's primary treating physician, Dr. Bryan Evans, completed an application for Disability Access Parking Privileges on behalf of the plaintiff, in which he opined that the plaintiff could not walk 200 feet without stopping to rest (R. 117).

---

[1] The Vocational Expert (VE) was not asked whether the plaintiff had any transferable skills.

Dr. Evans referred the plaintiff to Dr. Larry Parker in August 2005 due to the plaintiff's complaints of low back pain and left leg numbness (R. 120). Dr. Parker, who had previously performed a cervical disk fusion on the plaintiff, diagnosed the plaintiff with low back pain, lumbar radiculitis, lumbar spinal stenosis, and lumbar degenerative disk disease (R. 120, 124). At the time, Dr. Parker noted that an MRI showed mild spondylosis and he recommended conservative treatment, take more personal responsibility for his overall health, start a walking program and start an exercise program (R. 121).

Dr. Evans also sent the plaintiff to Dr. Robert Hash, for left hand and left leg tingling and numbness (R. 129). Dr. Hash took x-rays, from which he noted mild scattered degenerative changes in the plaintiff's lumbar spine, and recommended an MRI (R. 130). These x-rays did find a diminutive central disc protrusion at C3-4, a moderate sized central intervertebral disc protrusion at C4-5, his previous spinal fusion at C5-6, mild endplate overgrowth at C6-7; minimal left foraminal disc bulge at L1-2, moderate disc space narrowing and mild broad based disc bulge at L2-3, mild broad based disc bulge at L4-5, and mild broad based disc bulge and left posterolateral endplate overgrowth at L5-S1 (R, 135-137). A myelogram noted multilevel mild degenerative disc changes, most significantly at L2-3 (R. 139). Dr. Hash noted he did not see any obvious nerve root compression and placed the

4

plaintiff on Neurontin[2] (R. 127). An EMG Nerve Study found no evidence of a large fiber peripheral polyneuropathy, lumbrosacral neuropathy or plexopathy in the left leg (R. 133-134). The MRI found no cyst and nothing surgery could help, but did note multilevel degenerative changes, most pronounced at the L2-3 level, and degenerative facet changes (R. 224, 229). Physical therapy was recommended (R. 219-220).

Dr. Evans' treatment records reflect that the plaintiff was prescribed Byetta for diabetes and Cymbalta for chronic neck pain and depression (R. 142). He noted the plaintiff's complaints of dizziness and worsening back pain, with weakness and tenderness down his left leg into his foot (R. 145). In July 2005 Dr. Evans diagnosed the plaintiff as suffering from persistent vertigo probably secondary to labyrinthitis[3] worsened by his diabetes (R. 145). Dr. Evans noted that the plaintiff has diffuse pains, including discomfort in his legs and lower back (R. 144). Dr. Evans formed a diagnosis of chronic pain syndrome and increased plaintiff's Lortab prescription to four per day (R. 144). Dr. Evan also noted that "[h]e is still considering and felt that this was appropriate looking towards disability and will send off any forms that are needed from our end to help out with this" (R. 144). A July 2005 MRI found degenerative disc disease at L1-2, L2-3, L3-4, and L5-S1, most pronounced at L2-3

---

[2]Nuerontin is used for painful neuropathies and other nerve related pain.

[3]Labryinthitis is a balance disorder caused by inflammation in the inner ear.

with a moderate broad based disc bulge and broad based central disc protrusion producing mild central stenosis (R. 241).

The plaintiff was sent for a consultative psychological evaluation in January 2006 (R. 170). Thomas Tenbrunsel, Ph.D., diagnosed the plaintiff as suffering from Major Depressive Disorder, Recurrent, Severe without Psychotic Features, Adjustment Disorder with Depression due to not being able to work, and Adult Attention Deficit Hyperactivity Disorder/Combined Type (R. 171). Dr. Tenbrunsel believed that the plaintiff was on appropriate medication given these prescriptions but should be referred for psychiatric treatment and therapy, was not limited from employment from a psychological standpoint, but might have medical problems which affect his employability (R. 171).

The plaintiff was sent for a consultative physical evaluation in February 2006 (R. 172). That examination found that the plaintiff was an insulin dependant diabetic who complained of neck pain for the past five years (R. 172). The plaintiff reported that the cervical fusion helped with the pain for several months, but then it returned (R. 172). Upon examination, range of motion in all extremities was normal, the plaintiff had no tenderness or spasm in his back, and he could squat and rise and heel and toe walk without difficulty (R. 173-174). Prem K. Gulati, M.D., recorded diagnoses of status post cervical fusion with neck pain, low back pain syndrome, insulin dependent diabetes, history of vertigo, and possible peripheral neuropathy

(R. 174). Dr. Gulati believed the plaintiff could perform lifting, carrying, and alternating sitting/standing types of jobs without much difficulty[4] (R. 174).

Dr. Evan's March 2006 treatment records note that the plaintiff was having increased trouble with his left leg numbness, which he diagnosed as peripheral neuropathy, and that Cymbalta was not helping, so the plaintiff's medication was changed to Zoloft (R. 235). Chronic abdominal pain and chronic anxiety were noted (R. 235).

In May 2006 Dr. Evans completed a Clinical Assessment of Pain Form in which he noted that the plaintiff suffers from pain that was intractable and virtually incapacitating, that physical activity would increase this pain to an extent bedrest and/or medication would be necessary, and that the plaintiff's medical condition would cause more than four absences from work per month on a regular basis (R. 203). Additionally, Dr. Evans noted that the plaintiff's medication rendered him unable to function at a productive level (R. 204). Dr. Evans also completed a Physical Residual Functional Capacities Evaluation in which he states that the plaintiff suffers from chronic back pain, peripheral neuropathy with left leg weakness, and anxiety and depression (R. 206). He noted that the plaintiff was on chronic pain medication and anti-depressants, both of which caused drowsiness (R. 206). He stated that the plaintiff was not a malingerer (R. 207). In Dr. Evan's opinion, the

---

[4]The court notes that the ALJ did not include a limitation requiring a sit/stand option in either of the hypotheticals given to the VE or in his opinion regarding work the plaintiff could perform. *See* R. 24, 310-312.

plaintiff could walk no more than one block, sit for no more than 30 minutes at a time, stand for 30 to 45 minutes at a time, and sit and stand for less than two hours total in an 8 hour work day (R. 208). The plaintiff also needed to walk for 10 minutes at a time every 20 minutes, and could lift no more than 10 pounds occasionally (R. 208). He noted that the plaintiff had limitations in twisting, bending, crouching, and climbing, and had limitations reaching, handling, grasping and with fine manipulation (R. 209).

In May 2006 the plaintiff underwent a colonoscopy and post-operative diagnoses of hematochezia,[5] lower abdominal discomfort, a family history of colon cancer, polyps, and diverticulosis were made by Dr. William R. Nuessle (R. 214).

Dr. Evan's treatment records from October 2006 again note vertigo, general malaise, and swelling of his foot (R. 231). Dr. Rajesh Patel saw the plaintiff for follow up after a esophagogastoduodenoscopy in May 2006, due to chest pain and chronic GERD (R. 266, 275, 280). Dr. Patel noted that this test found a hiatal hernia and gastritis (R. 266). A June 2007 evaluation of chest pain and dyspnea found the plaintiff's chest pain to be unrelated to coronary artery disease and that his leg discomfort was unrelated to vascular disease (R. 250). As of that time, the plaintiff's prescriptions included Soma, Lortab, Ultram, Neurontin, Zoloft, Xanax, Allegra, Avandamet, Nexium and Cialis (R. 255). He was noted to suffer from increasing fatigue, occasional headaches, allergic rhinitis, dyspnea at night, peripheral edema,

---

[5]Hematochezia is caused by gastrointestinal bleeding. *See e.g.*, www.nih.gov.

indigestion, reflux, back pain, neck pain, multiple arthritic complaints, numbness and tingling of lower extremities related to neuropathy, anxiety, stress, and depression (R. 255). Records from July 2007 reflect that the plaintiff continued to complain of intermittent chest pain (R. 265). An ultrasound was obtained on the plaintiff's abdomen in July 2007 due to complaints of ongoing abdominal pain (R. 273). This found no significant abnormalities (R. 273).

After the hearing, in July 2008, the plaintiff returned to Dr. Hash, who noted that the plaintiff suffered from a large disc herniation at L4-5, pain in his neck and right shoulder, and a protrusion at C6-7 (R. 292). A fusion at C4-5 was suggested by Dr. Hash, who carefully recorded that any such surgery would be difficult (R. 292). Dr. Hash's records reflect that the plaintiff states he was hurting so badly he had considered taking his own life and wanted to proceed with the surgery (R. 292). These medical records were submitted to the Appeals Council.[6]

At the hearing, the ALJ asked the VE to assume an individual with the plaintiff's age and education who has past relevant work as an industrial truck operator, who could do light work, sit for 6 to 8 hours in an 8 hour work day, with restrictions from climbing, working at unprotected heights or around dangerous machinery, driving commercial equipment, and able to understand, remember and

---

[6]Under the law of this Circuit, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir.2007).

execute simple, but not detailed or complex instructions, with interaction with coworkers, supervisors and the public limited to occasionally (R. 310). The VE responded that light, unskilled jobs existed in the national economy within these limitations (R. 310). In response to questions from the ALJ, the VE further testified that pain and discomfort which rendered someone unable to perform simple, routine work activities for two hours at a time would render such an individual unemployable (R. 311). Additionally, a level of absenteeism of two or more days would preclude all unskilled employment[7] (R. 311). Likewise, the inability to engage in frequent handling of objects with both hands would preclude all jobs identified by the VE (R. 312).

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233,

---

[7]The record contains no indication as to whether this is two or more days per week, per month, or per year.

1239 (11th Cir.1983)(citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See id.* Moreover, failure to apply the correct legal standards is grounds for reversal. See *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

**Legal Analysis**

The ALJ carefully detailed all of the evidence contained in the record before him, then rejected most of it. He found that the plaintiff's mental impairments did not meet or medically equal Listings 12.04 of 12.06 because the plaintiff had not sought treatment from a mental health professional (R. 23). Thus, the ALJ summarily concluded that the plaintiff's mental limitations could pose no more than moderate restrictions on his ability to perform work related activity (R. 24). Having considered the record as a whole, the court finds the ALJ failed to properly credit the opinions of the plaintiff's treating physician, and further failed to properly apply the pain standard.

Rejection of Treating Physician Testimony

"The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). In addition, the Commissioner "must

specify what weight is given to a treating physician's opinion and any reason for giving it no weight...." *MacGregor*, 786 F.2d at 1053.

The ALJ merely states that Dr. Evan's opinions regarding the plaintiff's abilities "are also not supported by the medical records" (R. 25). He thereafter finds that in June 2006 Dr. Evans' records reflect no abnormal findings and that in August 2006, Dr. Hash did not think surgery was appropriate, but instead recommended physical therapy (R. 25). The ALJ also states that Dr. Evans' entries from August and September 2006 were solely for medication refills (R. 25). None of these findings have any bearing on whether the plaintiff's complaints of pain are credible.[8] The ALJ concludes that the plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment of the ALJ (R. 26).

The ALJ credits the opinions of the consultative examiners to whom plaintiff was sent by the Commissioner with "some weight" and accords the opinions of Dr. Evan's, the plaintiff's treating physician, little weight. Under Eleventh Circuit law, "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc.*

---

[8] The ALJ includes a finding that "Dr. Evans noted that the claimant's insurance has decreased the claimant's Cialis to five a month, and he was given samples, which indicates that he continued to be sexually active" (R. 25). This appears within the discussion of whether the plaintiff's allegation of disabling pain is credible. The court is of the opinion that whether or not the plaintiff is sexually active has no bearing on whether the plaintiff can engage in work related activity on a sustained basis, that being eight hours a day, five days a week.

*Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). "Good cause" exists where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *Id.* If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor*, 786 F.2d at 1053. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor*, 786 F.2d at 1054; *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

Here, the ALJ has afforded no medical professional "great weight." He gives the plaintiff's treating physician "little weight," consultative examiners "some weight," and fails to accord any weight to the variety of specialists to whom the plaintiff has been referred. Even given the ALJ's preference for one time examiner Dr. Gulati's opinions over Dr. Evans' opinions, the ALJ wholly ignores Dr. Gulati's recommendation that the plaintiff would require a sit/stand option.[9]

---

[9] The ALJ does not discount this finding by Dr. Gulati, he simply ignored it. In order for a VE's testimony to constitute substantial evidence that a claimant can perform other work, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999). The ALJ cannot both take Dr. Gulati's medical opinion as the only one in the record worthy of "some" weight" but also ignore the very recommendations contained in that record. The ALJ cannot arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); see also *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985)

Here, the only explanation provided by the ALJ for rejecting the opinions of Dr. Evans is the blanket statement that Dr. Evans' opinions are not consistent with the remaining medical evidence. However, the ALJ points to no specific contradiction between Dr. Evans' opinions and the remainder of the medical records. Dr. Evans has treated the plaintiff since 1998 which is more than ten years (R. 169). During that decade, Dr. Evans has seen the plaintiff no less than forty times. He has referred the plaintiff to Dr. Parker for low back pain, lumbar radiculitis, lumbar spinal stenosis, and lumbar degenerative disc disease (R. 120), to Dr. Hash for left hand and leg numbness and tingling (R. 129), to Dr. Mulpar for a nerve conduction study (R. 133), to Dr. Nuessle for a abdominal problems (R. 214), to Dr. Patel for gastrointestinal issues (R. 214-217), to Dr. Hash for low back pain radiating down his left leg (R. 221), to Dr. Sutherland for an MRI (R. 241), to Dr. Hunter for cardiac evaluation (R. 25), and to Dr. Patel for gastroesophageal studies and treatment (R. 259), since January 1, 2005. Not one of these doctors opined that the plaintiff was exaggerating or malingering. The court finds "good cause" to disregard the opinions of Dr. Evans' are lacking here.

The Pain Standard

The ALJ applied a modified version of the three part pain standard mandated by the Eleventh Circuit Court of Appeals, and found that although the plaintiff has a "history of having undergone treatment for his numerous impairments, which would normally weigh in his favor, the record indicates that his treatment has been

14

essentially routine and conservative in nature...." (R. 25).  The court finds this is not a basis to reject the plaintiff's complaints of pain.  This Circuit has no requirement that treatment be radical, non-routine, unconservative or solely surgical before benefits may be awarded or testimony may be found credible.  Rather, a lack of medical evidence confirming the severity of the alleged pain and a lack of an objectively determined medical condition which is of such severity that it can reasonably be expected to give rise to the alleged pain is the required standard for rejecting such testimony.  *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir.1991).

Proper application of the pain standard, used when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms, requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)).

While the standard requires objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, it does not require objective proof of the pain itself. Thus under both the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the standard a claimant who can show that his condition could reasonably be expected to give rise

15

to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929. This same standard applies to testimony about other subjective symptoms. Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote,* 67 F.3d at 1561. Therefore, if a plaintiff testifies he suffers from pain or other subjective symptoms at a level that would prevent work and he satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

The medical records demonstrate that the plaintiff has had ongoing complaints of pain for which his treating physician has prescribed ever increasing doses of pain medication and referred the plaintiff to an assortment of specialists.  Neither Dr. Evans nor any specialist has opined that the plaintiff is exaggerating or malingering. Numerous medical tests have revealed a variety of degenerative changes in the plaintiff's spine, all of which are objective evidence of an underlying medical condition that is of a severity that it can be reasonably expected to give rise to the alleged pain.  The plaintiff testified his medications had side effects which included sleepiness, headaches and stomachaches (R. 305), which is supported both by the list of medications the plaintiff takes and the opinion of Dr. Evans (R. 206).

The ALJ found the plaintiff's allegations of disabling pain unpersuasive for reasons such as that when the plaintiff complained to Dr. Evans that his left leg was

a little worse than it had been, this involved numbness, and not pain (R. 25). In spite of finding that the plaintiff was complaining of numbness and not pain, he failed to incorporate any limitation regarding numbness into his hypothetical to the VE or into his findings of severe impairments. Although the ALJ did not have the benefit of the medical record of Dr. Hash, dated five months after the hearing and submitted for the first time to the Appeals Council, that record demonstrates that the plaintiff had a medical condition of such severity that "he has thought about taking his own life" (R. 292). The record reflects Dr. Hash's diagnosis of radiculitis,[10] degenerative disc disease, HNP without myelopathy,[11] and pain, all in the plaintiff's cervical spine (R. 292). The court finds these records are new, material evidence which bolsters the plaintiff's prior complaints of pain.

The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir.1991). Here, sufficient reasoning has not been provided. "As the hearing officer, [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir.1992). In the record before this court, numerous treating doctors carefully detailed the plaintiff's extensive list of medical problems. However, the sole treating

---

[10] Compression of nerve roots in the spine, which can cause pain in the arms, chest, neck or shoulders, as well as numb fingers and weak muscles in the arms and chest. *See* www.spinaldisorders.com.

[11] HNP stands for "Herniated nucleul pulposus." *See e.g.,* www.nih.gov.

17

physician to consider and provide treatment for manifestations of those numerous ailments is Dr. Evans. Dr. Evans' opinions regarding the plaintiff's limitations, pain levels, and effects from medication cannot be disregarded as "inconsistent with his own medical records" without further factual basis.

The ALJ did not consider all of the evidence that was introduced into evidence. The record clearly establishes, by more than substantial evidence, that the plaintiff's host of ailments prevent work activity on a sustained, eight hour a day, five day a week basis. The ALJ could only reach the result he did by ignoring the objective medical evidence regarding the plaintiff's physical and mental conditions, which mandates reversal. This court finds that the substantial weight of the evidence dictates that the plaintiff has been under a disability since his alleged onset date, and therefore the plaintiff is entitled to disability benefits.

Done, this 23rd of July, 2009.


_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE